54189 Chu Adv. Compl.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| Wai Chu | |
| | Case No. 16-16079 |
| Debtor. | |
| Chicago Patrolmen's Federal Credit Union | Judge Cox |
| Plaintiff, | |
| vs. | Adv. No |
| Wai Chu | |
| Defendant. | |

### COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF A DEBT

The Chicago Patrolmen's Federal Credit Union, the "Credit Union," by and through its attorneys, Kerry Trunkett and Caroline Hasten of Trunkett & Trunkett, P.C., for its Complaint against Wai Chu, herein "Defendant," pursuant to 11 U.S.C. §§523, §523(a)(2)(A) and §523(a)(2)(B) of the United States Bankruptcy Code, states as follows:

### JURISDICTION

1.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and Local General Rule 2.33(a) of the United States District Court for the Northern District of Illinois.

2.   This is a core proceeding brought pursuant to 28 U.S.C § 157(b)(2)(I) and (J) and brought as an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001.

BACKGROUND

3. This is a claim for relief brought pursuant to 11 U.S.C. §§523, §523(a)(2)(A) and §523(a)(2)(B).

4. On May 12, 2016, the Defendant voluntarily filed for protection under Chapter 7 of the United States Bankruptcy Code.

5. On September 9, 2015, the Defendant submitted a loan application to the Credit Union. A true and correct copy of the loan application is attached as Exhibit A.

6. On September 9, 2015, the Credit Union approved said loan application and the Defendant entered into a loan agreement with the Credit Union. A true and correct copy of the loan agreement is attached as Exhibit B.

7. In granting and extending credit to Defendant, the Credit Union relied upon the information contained in the application.

8. The Defendant remains indebted to the Credit Union pursuant to the loan in the amount of $19,316.17. The Defendant has not made a payment on the loan since January 1, 2016.

CLAIMS FOR RELIEF

### COUNT I
### §523(a)(2)(A)
**The Defendant Obtained the Loan and the Extension of Credit Through Actual Fraud**

9. The Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 8.

10. When entering into the loans and the extension of credit with the Credit Union, the Defendant knowingly and intentionally failed to inform the Credit Union that he lacked the ability and intent to repay either.

11. The Defendant received and acquired at least fifteen new loans or extensions of credit during a five month period between August and December 2015. In total, the Defendant received approximately $140,000.00 in loans or extensions of credit during that period.

12. The Defendant had no ability or intent to repay these loans.

13. The Defendant fraudulently entered into the loan agreement with the Credit Union because the Defendant misrepresented his intent to repay the debts and the debts were incurred within a broader loan fraud scheme.

14. The Credit Union requires every member to complete a loan application, which includes a statement for the purpose of the loan.

15. In determining whether or not to grant a loan to a member, the Credit Union heavily relies on the purpose stated for the loan.

16. On the loan application, the Defendant stated that the purpose of the loan was for "BILL CONSOLIDATION."

17. The Defendant did not use the funds to consolidate bills; in fact, he obtained more credit from different financial institutions in the following four months.

18. Additionally, the Defendant stated at the meeting of creditor's that he spent the money gambling at the casino.

19. Had the Credit Union known the Defendant was planning to obtain even more unsecured credit from different financial institutions and use the money to gamble, the Credit Union would not have given the Defendant the unsecured loan.

20. The Defendant knew at the time of applying for the loan that he did not have the intention of repaying the loan as he applied for, and received, over $140,000.00 in unsecured

54189 Chu Adv. Compl.

debt in the next three months, lost it gambling, and then filed for Chapter 7 Bankruptcy protection.

## COUNT II
### §523(a)(2)(B)
### The Defendant Submitted Materially False Information Respecting His Financial Condition, Which the Credit Union Reasonably Relied on.

21. The Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 20.

22. The Credit Union reasonably relied upon the application submitted by the Defendant when granting him the loan.

23. On the loan application, the Defendant stated that the purpose of the loan was for "BILL CONSOLIDATION."

24. The Defendant did not use the funds to consolidate bills; in fact, he obtained more credit from different financial institutions in the following four months.

25. In the months following the Defendant's loan with the Credit Union, the Defendant incurred over $140,000.00 of additional unsecured debt, making it impossible to repay the loan with the Credit Union.

WHERFORE, the Plaintiff, Chicago Patrolmen's Federal Credit Union, prays that this Court enter an order finding that the amounts owed under the loan agreement and the credit card agreement be non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A) and §523(a)(2)(B) and for such other and further relief as this Court deems just and proper.

54189 Chu Adv. Compl.

Respectfully submitted,

Chicago Patrolmen's Federal Credit Union

**TRUNKETT & TRUNKETT, P.C.**
20 N. Wacker Drive, Suite 1434
Chicago, IL 60606
312.324.3101
Kerry Trunkett: 6188221
Caroline Hasten: 6316656

By: /s/ Caroline O. Hasten

Caroline Hasten, One of Its Attorneys

**EXHIBIT A**

## Chicago Patrolmen's Federal Credit Union
1407 W. Washington Blvd.
Chicago, IL 60607
(312) 726-8814

**MASTER APPLICATION**
PLEASE PRINT IN INK OR TYPE

**NOTICE TO MARRIED APPLICANTS:** You have the right to apply for a separate account in your name.

### CHECK TYPE CREDIT REQUESTED

☐ **Individual Credit:** Complete **Applicant** sections if only the applicant's income is considered for loan approval.
Complete **Applicant** and **Co-Applicant/Co-Signer/Other** sections (1) if you are relying on income from alimony, child support, or separate maintenance or on the income or assets of another person as the basis for repayment of credit requested, or; (2) if you reside in a Community Property State, or; (3) if you are relying on property located in a Community Property State as a basis for repayment of the credit requested. Community Property States include: AK, AZ, CA, ID, LA, NM, NV, TX, WA and WI.

☐ **Joint Credit:** Complete **Applicant** and **Co-Applicant** sections if your co-applicant will be contractually liable for repayment of the loan and initial below:
We intend to apply for joint credit: _____ Applicant Initials _____ Co-Applicant Initials

| I/WE WOULD LIKE A LOAN OF | FOR THE FOLLOWING PURPOSE | SECURITY OFFERED | REPAYMENT |
|---|---|---|---|
| $ 20,000.00 | BILL CONSOLIDATION | | ☐ PAYROLL DEDUCTION ☒ CASH<br>☐ AUTOMATIC PAYMENT ☐ |

### APPLICANT INFORMATION

**APPLICANT** | ☐ CO-APPLICANT ☐ CO-SIGNER ☐ NON-APPLICANT SPOUSE/OTHER

| LAST NAME | FIRST NAME | MIDDLE INITIAL | LAST NAME | FIRST NAME | MIDDLE INITIAL |
|---|---|---|---|---|---|
| Chu | Wai | K | | | |

| ACCOUNT NUMBER | SOCIAL SECURITY NUMBER | ACCOUNT NUMBER | SOCIAL SECURITY NUMBER |
|---|---|---|---|
| ▮▮▮ | ▮▮▮ | | |

| DATE OF BIRTH | HOME PHONE NUMBER | BUSINESS PHONE NO./EXT. | DATE OF BIRTH | HOME PHONE NUMBER | BUSINESS PHONE NO./EXT. |
|---|---|---|---|---|---|
| ▮ | ▮ | ▮ | | | |

| DRIVER'S LICENSE NUMBER AND STATE | MOTHER'S MAIDEN NAME | DRIVER'S LICENSE NUMBER AND STATE |
|---|---|---|
| ▮ | ▮ | |

| PRESENT ADDRESS (Street, City, State, Zip) | | ☒ OWN ☐ RENT | PRESENT ADDRESS (Street, City, State, Zip) | | ☐ OWN ☐ RENT |
|---|---|---|---|---|---|
| 5358 N Nottingham Ave | | HOW LONG/MONTHLY PAYMENT | | | HOW LONG/MONTHLY PAYMENT |
| Chicago    IL    60656 | | 3 yr(s) 0 mo(s)   0.00 | | | 0.00 |

CHECK ONE IF YOU RESIDE IN OR ARE RELYING ON PROPERTY IN A COMMUNITY PROPERTY STATE, OR IF YOU ARE APPLYING FOR JOINT OR SECURED CREDIT.
☐ MARRIED   ☐ SEPARATED   ☐ UNMARRIED (SINGLE, DIVORCED, WIDOWED)

CHECK ONE IF YOU RESIDE IN OR ARE RELYING ON PROPERTY IN A COMMUNITY PROPERTY STATE, OR IF YOU ARE APPLYING FOR JOINT OR SECURED CREDIT.
☐ MARRIED   ☐ SEPARATED   ☐ UNMARRIED (SINGLE, DIVORCED, WIDOWED)

LIST AGES OF DEPENDENTS NOT LISTED BY CO-APPLICANT (Exclude Self) | LIST AGES OF DEPENDENTS NOT LISTED BY APPLICANT (Exclude Self)

### EMPLOYMENT INFORMATION

| PRESENT EMPLOYER'S NAME AND ADDRESS | PRESENT EMPLOYER'S NAME AND ADDRESS |
|---|---|
| Cpd | |

| OCCUPATION | SUPERVISOR | OCCUPATION | SUPERVISOR |
|---|---|---|---|
| Police Officer | | | |

| DATE EMPLOYED | WORK PHONE/EXT. | IF SELF EMPLOYED, TYPE OF BUSINESS | DATE EMPLOYED | WORK PHONE/EXT. | IF SELF EMPLOYED, TYPE OF BUSINESS |
|---|---|---|---|---|---|
| 11/27/2006 | ▮ | | | | |

### INCOME INFORMATION

**OTHER INCOME NOTICE:** Alimony, child support, or separate maintenance income need not be revealed if you do not choose to have it considered.

**OTHER INCOME NOTICE:** Alimony, child support, or separate maintenance income need not be revealed if you do not choose to have it considered.

| EMPLOYMENT GROSS INCOME | OTHER INCOME | SOURCE | EMPLOYMENT GROSS INCOME | OTHER INCOME | SOURCE |
|---|---|---|---|---|---|
| $ 6,731.50  PER Month | $ 0.00 | | $ 0.00  PER Month | $ 0.00 | |

### REFERENCES

| NAME AND ADDRESS OF RELATIVE NOT LIVING WITH YOU | NAME AND ADDRESS OF RELATIVE NOT LIVING WITH YOU |
|---|---|
| ▮ | |

| STREET | RELATIONSHIP | STREET | RELATIONSHIP |
|---|---|---|---|
| X | Friend | | |

| CITY | STATE | ZIP | PHONE NUMBER | CITY | STATE | ZIP | PHONE NUMBER |
|---|---|---|---|---|---|---|---|
| | | | ▮ | | | | |

| NAME AND ADDRESS OF PERSONAL REFERENCE NOT RELATED TO YOU | NAME AND ADDRESS OF PERSONAL REFERENCE NOT RELATED TO YOU |
|---|---|
| | |

| STREET | | STREET | |
|---|---|---|---|

| CITY | STATE | ZIP | PHONE NUMBER | CITY | STATE | ZIP | PHONE NUMBER |
|---|---|---|---|---|---|---|---|

**CONTINUE APPLICATION ON REVERSE SIDE - SIGN THE REVERSE SIDE OF THE APPLICATION BEFORE SUBMITTING**

6001 F58501 Rev 10-2011   ©2005 Securian Financial Group, Inc. All rights reserved.

## ASSETS (LIST ALL ASSETS OF APPLICANT AND CO-APPLICANT/CO-SIGNER, IF APPLICABLE)

| APPLICANT | | CO-APPLICANT/CO-SIGNER | |
|---|---|---|---|
| CHECKING AMOUNT | NAME AND ADDRESS OF BANK OR FINANCIAL INSTITUTION | CHECKING AMOUNT | NAME AND ADDRESS OF BANK OR FINANCIAL INSTITUTION |
| $ 0.00 | | $ 0.00 | |
| SAVINGS AMOUNT | NAME AND ADDRESS OF BANK OR FINANCIAL INSTITUTION | SAVINGS AMOUNT | NAME AND ADDRESS OF BANK OR FINANCIAL INSTITUTION |
| $ 10.00 | Chicago Patrolmen's FCU | $ 0.00 | |

| APPLICANT | CO-APPLICANT | DESCRIPTION (I.E., AUTO, STOCK, REAL ESTATE, ETC.) | MARKET VALUE | PLEDGE AS COLLATERAL FOR ANOTHER LOAN? |
|---|---|---|---|---|
| | | REAL ESTATE (LOCATION, DATE ACQUIRED) | $ 0.00 | ☐ YES  ☐ NO |
| | | AUTOMOBILE (MAKE, MODEL, YEAR) | $ 0.00 | ☐ YES  ☐ NO |
| | | OTHER | $ 0.00 | ☐ YES  ☐ NO |

## DEBTS (LIST ALL DEBTS OF APPLICANT AND CO-APPLICANT/CO-SIGNER, IF APPLICABLE - ATTACH ANOTHER SHEET IF NECESSARY.)

| APPLICANT / CO-APPLICANT | NAME AND ADDRESS OF CREDITOR | ACCOUNT NUMBER | ORIGINAL AMOUNT | PRESENT BALANCE | MONTHLY PAYMENT |
|---|---|---|---|---|---|
| • | ☐ RENT  ☐ MORTGAGE  CHASE | | $ 0.00 | $ 304,009.00 | $ 2,032.00 |
| • | TEMPUR PEDIC | | $ 0.00 | $ 4,021.00 | $ 69.00 |
| • | BK OF AMER | | $ 0.00 | $ 10,987.00 | $ 304.00 |
| | | | $ 0.00 | $ 0.00 | $ 0.00 |
| | LIST ALIMONY, CHILD SUPPORT OR CHILD CARE PAID MONTHLY | | | | $ 0.00 |
| | LIST OTHER NAME(S) UNDER WHICH YOU HAVE RECEIVED CREDIT    TOTALS | | $ 0.00 | $ 319,017.00 | $ 2,405.00 |

## FINANCIAL INFORMATION (THESE QUESTIONS APPLY TO BOTH APPLICANT AND CO-APPLICANT/CO-SIGNER)

IF A "YES" ANSWER IS GIVEN TO A QUESTION, EXPLAIN ON AN ATTACHED SHEET.

| | APPLICANT YES | APPLICANT NO | CO-APPLICANT YES | CO-APPLICANT NO |
|---|---|---|---|---|
| DO YOU HAVE ANY OUTSTANDING JUDGEMENTS? | | • | | |
| HAVE YOU EVER FILED FOR BANKRUPTCY OR HAD A DEBT ADJUSTMENT PLAN CONFIRMED UNDER CHAPTER 13? | | • | | |
| HAVE YOU HAD PROPERTY FORECLOSED UPON OR REPOSSESSED IN THE LAST SEVEN YEARS? | | • | | |
| ARE YOU A PARTY IN A LAW SUIT? | | • | | |
| ARE YOU OTHER THAN A U.S. CITIZEN OR PERMANENT RESIDENT ALIEN? | | • | | |
| IS YOUR INCOME LIKELY TO DECLINE IN THE NEXT TWO YEARS? | | • | | |
| ARE YOU A CO-MAKER, CO-SIGNER OR GUARANTOR ON ANY LOAN NOT LISTED ABOVE? | | • | | |

| FOR WHOM (NAME OF OTHERS OBLIGATED ON THE LOAN) | TO WHOM (NAME OF CREDITOR) | PRESENT BALANCE | MONTHLY PAYMENT |
|---|---|---|---|
| | | $ 0.00 | $ 0.00 |

## LOAN APPLICATION SIGNATURE - PLEASE READ BEFORE SIGNING

All the information in this application is true. I understand that section 1014 Title 18 U.S. Code makes it a federal crime to knowingly make a false statement on this application. You have my permission to check it. You may retain this application even if not approved. I understand that you may receive information from others about my credit and you may answer questions and requests from others seeking credit or experience information about me or my accounts with you. If this application is approved, I agree to honor the provisions of the credit or loan agreement and security agreement covering my account or loan. (If this application is for two of us, this statement applies to both of us.)

**Credit Report Authorization.** By signing this Application, I authorize you to obtain my credit report for the purposes of evaluating this application and to obtain subsequent credit reports on an on-going basis in connection with this transaction, and for all other legitimate purposes, such as reviewing my accounts or taking collection action on the account.

**Permission to contact:** By providing a wireless telephone number (i.e., cell phone), I consent to receiving calls, including autodialed and prerecorded message calls, from the credit union or its third party debt collector at that number.

I acknowledge receipt of a copy of the HomeEquity Credit Plan Predisclosures and Handbook entitled "When Your Home is on the Line - What You Should Know About Home Equity Lines of Credit."

IMPORTANT NOTICE ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for me: When I open an account, you will ask for my name, address, date of birth, and other information that will allow you to identify me. You may also ask to see my driver's license or other identifying information.

| APPLICANT'S SIGNATURE | DATE | CO-APPLICANT/CO-SIGNER'S SIGNATURE (Where Applicable) | DATE |
|---|---|---|---|
| X [signature] | 09/09/2015 | X | |

## WISCONSIN RESIDENTS ONLY - MARITAL PROPERTY DISCLOSURES

No provision of a martial property agreement, unilateral statement under section 766.59 of the Wisconsin Statutes or a court decree under section 766.70 of the Wisconsin Statutes adversely affects the interest of the Credit Union unless Credit Union, prior to the time that credit is granted, is furnished a copy of the agreement, statement or decree or has actual knowledge of the adverse provision when the obligation to Credit Union is incurred.

**If you are a married applicant applying for an individual account:** (1) if your application is approved, section 766.56(3)(b) of the Wisconsin statutes requires Credit Union to notify your spouse of the extension of credit. If the extension of credit is open-end credit and Credit Union receives a written notice of termination from your spouse, we reserve the right to declare the entire extension of credit due and payable notwithstanding sections 425.103 and 425.105 of the Wisconsin Statutes, to the extent not prohibited by law.
(2) If you are a married Wisconsin resident applying for an individual account, you state that credit extended under this application for credit (if approved) will be incurred in the interest of your marriage or family.

| APPLICANT'S SIGNATURE | DATE |
|---|---|
| X | |

**Chicago Patrolmen's Federal Credit Union**
1407 W. Washington Blvd.
Chicago, IL 60607
(312) 726-8814

**CONSUMER LENDING PLAN**

| ACCOUNT NUMBER |
|---|
| [redacted] |

| BORROWER'S NAME AND ADDRESS | DATE OF BIRTH |
|---|---|
| WAI K CHU, 5358 N Nottingham Ave, Chicago, IL 60656 | [redacted] |
| CO-BORROWER'S NAME AND ADDRESS | DATE OF BIRTH |
| | |

"You", "Your" and "Borrower", means any person who executes the Plan by signing the Consumer Lending Plan, or any person who endorses a proceeds check or otherwise accepts, accesses, or uses Plan funds. "We", "us", "our" or "Credit Union" means the Credit Union named above.

**How the Plan Works.** This Consumer Lending Plan has a variety of subaccounts under which you may take various types of loans (called "advances"). Some subaccounts may be revolving (e.g., Personal Line of Credit). The credit available under these subaccounts will replenish as you pay down the balances. Other subaccounts are single-advance subaccounts such as New Auto. These subaccounts will not replenish and will have a set repayment schedule.

**Binding Contract.** This Consumer Lending Plan, which includes the Credit Agreement, Security Agreement, Truth-in-Lending Statement, and all Advance Receipts ("Plan"), is a binding legal contract that will govern the terms of all loans that you obtain under the Plan. You only sign once to open the Plan; thereafter, you may request additional advances without signing any paperwork unless requested by us.

By signing below, you are:

1. **Agreeing to repay all loans you take.** All loans you take under the Plan must be paid back, even if you don't sign any paperwork at the time of the loan.
2. **Pledging your shares and deposits in the Credit Union.** If you default, we may apply the shares and deposits in your accounts to the amount you owe us. We may also prevent you from withdrawing shares or deposits if you are in default, or, in the case of a share-secured or deposit-secured loan, if such withdrawal would cause your balance to fall below what you owe. Your pledge and our lien rights do not include any IRA, Keogh or other account which would lose special tax treatment if pledged. Please see the Security Agreement for complete details.
3. **Granting a security interest in all property you purchase or otherwise pledge.** If you default on any subaccount under the Plan, we may seize and sell any property you have purchased or pledged under that subaccount or any other subaccount. **Cross-Collateralization:** All other collateral you have pledged for any other loan with us (except your home and household goods) will also secure this Plan. **Release of Lien:** We will not release a lien on any of the collateral you have pledged if you are delinquent or in default on any of your subaccounts. For example: if you are in default of your line of credit subaccount, we will not release our lien on your vehicle loan, even if the vehicle loan is paid in full. Please see the Security Agreement for complete details.

**Interest Rates and Fees.** The rates and fees that apply to your subaccounts are disclosed on the separate Truth-in-Lending Statement and/or Advance Receipt.

**Purchase of Optional Products:** If offered, you may apply for optional loan protection products such as credit insurance, debt protection, or Guaranteed Asset Protection (GAP). These products are voluntary and are not required to obtain a loan from us. The premium or fee for the product(s) will be added to the outstanding balance and becomes part of your minimum monthly loan payment. We will retain a portion of this fee as compensation for providing this service. Purchase of optional products may extend the time it takes to pay off your outstanding balance(s). Once you purchase credit insurance or debt protection, all subaccounts under the Plan will be covered, unless you tell us otherwise.

---

**BORROWER'S ACKNOWLEDGEMENT & SIGNATURES**

By signing below, you understand and agree as follows:

**Acknowledgement:** You acknowledge that you have read, understand and accept the terms and conditions of the Consumer Lending Plan, Credit Agreement, Security Agreement, and the Truth-in-Lending Statement, and have received copies of these documents. You also agree to be bound by all Advance Receipts or similar documents and understand that by endorsing any advance proceeds check, or by otherwise accepting, using or accessing your advance proceeds, you are bound to the aforementioned documents.

**Negative Information Notice:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**IMPORTANT NOTICE ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT**
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying information.

**NOTICE TO CONSUMER: THIS IS A CONSUMER CREDIT TRANSACTION. (A) DO NOT SIGN ANYTHING BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (B) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (C) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT.**

| BORROWER'S SIGNATURE | DATE | CO-BORROWER'S SIGNATURE | DATE |
|---|---|---|---|
| X [signature] | 09/09/2015 | X | |

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| WAI K CHU | ███████ |

## APPLICATION AND DISCLOSURES for DEBT PROTECTION PLAN - Consumer Loans

**This Product is Optional.** Your purchase of the Debt Protection Plan ("Plan") is optional. Whether or not you purchase this protection will not affect your application for credit or the terms of any existing credit agreement you have with the Financial Institution. You may cancel the Program at any time. See the Program Agreement for an explanation of how the Program may be terminated.

|  | Premium Plan*: Plan # 422620 Death: cancels loan balance Disability: cancels 12 Payments | | Premier Plan*: Plan # 422621 Disability: cancels 12 Payments | | Classic Plan*: Plan # 422622 Death: cancels loan balance | |
|---|---|---|---|---|---|---|
| **I ELECT:** *(Check only one box)* | ☐ Single | ☐ Joint | ☐ Single | ☐ Joint | ☐ Single | ☐ Joint |
| Cost per $1,000 monthly outstanding loan balance: | $2.62 | $4.75 | $1.90 | $3.59 | $0.72 | $1.16 |
| Estimated Total Fee: (closed-end loans only) | $ 1,704.67 | $ 3,150.36 | $ 1,228.00 | $ 2,356.41 | $ 460.25 | $ 744.62 |

*Benefit Maximums: **Death Protection** cancels a maximum of $75,000.
**Cancellations** listed are per occurrence.
**Monthly cancellations** are limited to $1,000 per month and $15,000 over the term of the loan, per each Protected Event and per each protected Borrower.

☒ No, I do not wish to apply for the voluntary Debt Protection Plan at this time.   W. C (Borrower 1 initials) _____ (Borrower 2 initials)

**Application Eligibility:**
To be eligible to apply, I must meet the following conditions. By signing this Application, I am stating that: (1) I am under age 70; (2) *if applying for Death or Disability protection:* During the last 2 years, I have not been advised of or treated for: cancer, heart attack or coronary artery disease, stroke, cirrhosis, AIDS, or any disorder of my immune system, or had any test showing evidence of antibodies to the AIDS virus (a positive HIV test); and (3) *if applying for Disability protection:* I am presently working twenty-four (24) or more hours per week.

### BORROWER'S SIGNATURE

I acknowledge and agree that: (a) I meet the eligibility requirements listed above. If it is discovered that I do not meet the eligibility requirements above, my participation in the Plan will be terminated, I will receive a refund of any fees paid, and an otherwise valid claim will be denied; (b) I have received the disclosures herein and have thoroughly read the *Debt Protection Plan Agreement ("Agreement")*, and agree to abide by the terms of the Agreement; (c) I authorize the Plan fees to be added to my loan each month; and (d) I understand that I may not be eligible for all benefits contained in the Plan. This document is hereby incorporated into Borrower's loan documentation as if fully set forth therein. **There are eligibility requirements, conditions, and exclusions that could prevent you from receiving benefits under the Program. See the Program Agreement for details.**

| BORROWER 1 SIGNATURE | DATE | BORROWER 2 SIGNATURE *(if applying for Joint Protection)* | DATE |
|---|---|---|---|
| X | | X | |

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| WAI K CHU | |

## CREDIT AGREEMENT

**Agreement to Terms and Promise to Pay:** By signing this Plan or any advance proceeds check, and/or by accepting, using, or accessing any proceeds under this Plan, you agree to the terms and conditions of the Consumer Lending Plan, Credit Agreement, Security Agreement, Truth-in-Lending Statement, and all Advance Receipts, or similar document, and any future amendments thereto, and promise to pay all amounts due.

**Endorsement of Proceeds Check:** By endorsing an advance proceeds check, you are agreeing to the terms of the Consumer Lending Plan and Advance Receipt, and are granting a security interest in the collateral described in the Advance Receipt. The terms of the advance proceeds check and the Advance Receipt, including the collateral description, are subject to the terms of the Plan.

**How to Compute the Interest Charge:** The Interest Charge begins to accrue on the date of each advance and accrues for each day the balance remains unpaid. The unpaid balance for each day is multiplied by the applicable daily periodic rate to determine the Interest Charge for that day. The sum of these daily charges is the Interest Charge. The unpaid balance is the outstanding balance at the close of business after all transactions have been entered.

**Advances, Credit Limits, Plan Access, and Periodic Statements:** You may apply for advances under this Plan in any manner allowed by us. We may refuse to make any advance.

**Late Fees and Other Charges:** You agree to pay all fees and charges imposed under the Plan in the amount(s) disclosed on the Truth-in-Lending Statement, which fees may increase from time to time. Such fees shall be added to your outstanding balance and your minimum payment may increase or your loan term may be extended.

**Overdraft Protection:** If you request Overdraft Protection, any overdrafts on your checking account will be added to your line of credit.

**Perfection of Security Interest; Increase in Rate; Default:** If we are unable to perfect our lien on the collateral pledged for any advance, or the value of the collateral deteriorates significantly, that advance may be treated as an advance under a line of credit for the purpose of determining the Interest Rate, and the Interest Rate shall increase to the highest line of credit rate in effect at that time. Your minimum monthly payment shall also increase accordingly. We may also consider the loan to be in default and can call the loan immediately due and payable, in which case you must pay the entire amount due in one lump sum. The loan while in default will bear interest at the highest rate allowed by law.

**Advance Receipts:** If you take an advance under this Plan, you will receive an Advance Receipt or similar document confirming the transaction and describing any collateral given as security for that advance. The terms of the Advance Receipt shall be pursuant to and governed by the terms of the Consumer Lending Plan.

**Payments:** The minimum monthly payment and due date will be set and disclosed at the time each advance is made. You may pay the outstanding balance in full or pay more than the minimum due at any time without penalty. However, minimum payments are required for each billing cycle as long as any balance exists.

**Skip Payment:** If we make a skip payment option available, you may skip making your payment(s) for certain month(s). If you choose this option, interest will continue to accrue, but no late payment charges will be imposed during the skip period. All credit terms applicable immediately prior to the skip period will again apply once the skip period has expired.

**Property Insurance:** You are required to carry insurance against any loss by fire or theft, and collision and comprehensive coverage on motor vehicles and other property pledged as security on this Plan, with a maximum deductible as set forth by us. The insurance may be obtained by any insurer of your choice that is acceptable to us. The insurance coverage must be maintained in force for as long as the loan is outstanding, and provide for a loss payable endorsement in favor of us. We must receive the loss payee endorsement within 30 days of your loan advance date. If you fail to provide insurance coverage, we may obtain insurance to protect our interest in the property and the total cost of insurance (the premium and any administrative costs we incur) will be added to the loan balance. The insurance placed by us is without benefit to you individually, does not satisfy the State insurance requirements and is primarily for our protection. Coverage obtained by us may be considerably more expensive than coverage you could obtain on your own. If we place this coverage, the total cost of insurance will be paid by you either on demand, or by increasing your periodic payment, or by extending the loan term. You assign us the right to receive and endorse any insurance proceeds check, to apply those proceeds to the sums you owe, and you direct any insurer to pay those proceeds directly to us. You further authorize us or our representative to obtain the necessary information for verification of adequate coverage. We, or our affiliates, may receive compensation or reimbursement of expenses related to any insurance premiums added by us.

**Default:** You shall be considered in default if we should, in good faith, believe that prospect of payment, performance, or our security interest in, or realization, of the collateral is impaired. You shall also be in default if: (1) you break any promise made under this Plan; (2) you do not use the loan proceeds for the purpose stated in your advance request; (3) you die; (4) you file a petition in bankruptcy, insolvency, or receivership or are put involuntarily into such proceedings; (5) if the collateral is lost, damaged or destroyed, or if it is levied against, attached or garnished; (6) you do not make your required payments on time; (7) anyone is in default of any security agreement given in connection with the Plan; (8) you commit fraud or make any false or misleading statements in connection with this Plan; (9) you are in default of any other loan or security agreement you have with us; (10) you use the Plan for any illegal purpose or transaction as determined by applicable law. Any one of the foregoing events shall evidence a reasonable belief that prospect of payment, performance or realization of the collateral is impaired.

**Actions Upon Default:** If you default, we may declare all amounts immediately due and payable, and you must immediately pay us the total unpaid balance, as well as the Interest Charge to date, any late charges and all collection costs permitted under law. The balance in default shall bear interest at the highest rate permitted by applicable law. If your state law requires a notice of default and an opportunity to cure that default, these rights will be afforded to you before we exercise our remedies.

**Costs of Collection:** You shall pay all costs incurred by us in collecting any amount you owe or in enforcing or protecting our rights. Costs of collection include, but are not limited to, collection agency fees, repossession fees, appraisals, environmental site assessments, casualty insurance, and reasonable attorney's fees for any action taken by an attorney who is not our salaried employee in order to collect this loan or preserve or protect our rights and remedies, including, without limitation, pre-suit demands for payment, pre-suit mediation or settlement negotiations, investigation and assessment of our rights, participation in bankruptcy cases, matters, and proceedings (including, without limitation, filing proofs of claim, pursuing reaffirmation agreements, attending meetings of creditors, and pursuing complaints, motions, and objections that relate in any way to the credit union's collateral or right to payment), collateral disposition, non-bankruptcy suits and/or administrative actions, and appeals. *For Alabama borrowers:* attorney's fees after default shall not exceed 15% of the unpaid debt, or such higher amount as a court may allow. *For Georgia borrowers:* attorney's fees shall not exceed 15% of principal and accrued interest, or such higher amount as a court may allow.

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| WAI K CHU | ███████ |

## CREDIT AGREEMENT

**Borrower Responsibility:** You must notify us of any change in your name, address, employment, financial situation or credit standing, and you must provide us any additional financial information we request. To prevent identity theft, you may be required to verify any change in your address. You shall not request an advance if you know or should have known that you cannot pay it back.

**Joint Plans:** If this Plan has more than one borrower, each of you is individually and jointly responsible for paying all amounts owed. We can enforce our rights against one or all of you. If you give us inconsistent instructions, we can refuse to follow those instructions or follow the instruction of our choosing. Unless our written policy requires all of you to sign for an advance, each of you may obtain advances individually and each agrees to repay advances made to the other(s). Any notice mailed to one shall be considered notice mailed to all. Any of you can remove yourself from responsibility as a co-borrower by notifying us in writing, unless such removal would violate our policy or regulations. In such a case the Plan may be terminated. Removing a Borrower or terminating the Plan will not relieve any of you from joint or several liability for any obligations already incurred.

**Termination:** This Plan may be terminated (1) upon adverse re-evaluation of your creditworthiness; (2) If you should fail to meet the terms of the Plan; (3) at our option, or your option, upon written notice. Termination will not affect your obligation to pay the balance outstanding prior to termination.

**Unlawful Transactions:** Your Plan shall not be used to make or facilitate any illegal transaction(s); and any such use will constitute an event of default. We shall not have any liability for any such use by you or any authorized user(s). You shall indemnify and hold us harmless from any suits, liability, damages or adverse action of any kind that results directly or indirectly from such illegal use.

**Change in Terms:** We may change the terms of this Plan at any time in accordance with applicable law. Increases in the interest rate will apply to future advances and, subject to applicable law, unpaid balances.

**Severability:** In case any provision of this Plan is held invalid, the Plan shall be enforced as if such provision was never included.

**No Waiver:** We may waive or delay exercising any of our rights without losing our ability to exercise those rights in the future.

**Governing Law:** This Plan shall be construed and enforced according to the laws of the State in which our headquarters are located.

**Final Agreement:** This written agreement is a final expression of the agreement between you and us, and may not be contradicted by evidence of any oral agreement.

**State Notices:**

**NOTICES TO WISCONSIN BORROWERS:** (1) If you are married and are extended individual credit, Wis. Stat. 766.56(3)(b) requires us to notify your spouse of the extension of credit. If we receive written notice of termination from your spouse pursuant to Wis. Stat. Section 766.565(5), we may declare you in default of the Plan and call the entire extension of credit due and payable notwithstanding Wis. Stat. Sections 425.103 and 425.105. If the Plan is called due and payable, you may have certain rights to cure the default.
(2) Additionally, no provision of a marital property agreement, a unilateral agreement under Wis. Stat. 766.59, or a court decree under Wis. Stat. 766.70 adversely affects our interests unless prior to the time the credit is extended, we are furnished with a copy of the agreement or statement, or have actual knowledge of the adverse provision when the obligation is incurred.

**NOTICE FOR ARIZONA OWNERS OF PROPERTY:** It is unlawful for you to fail to return a motor vehicle that is subject to a security interest within thirty days after you have received notice of default. The notice will be mailed to the address provided on this document unless you have given us a new address. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.

**NORTH DAKOTA NOTICE TO BORROWERS PURCHASING A MOTOR VEHICLE** - THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

**NOTICE TO CALIFORNIA RESIDENTS:** By signing this Plan, you specifically agree that we may access the records of the California Department of Motor Vehicles from time to time to obtain your current mailing address, and by so agreeing, you are specifically waiving your rights under sections 1808.21 and 1808.22 of the California Vehicle Code.

*For Missouri Residents:* Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

*For Vermont Residents:* **NOTICE TO CO-BORROWER: YOUR SIGNATURE ON THIS AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THE PLAN. IF THE BORROWER DOES NOT PAY, WE HAVE A LEGAL RIGHT TO COLLECT FROM YOU.**

*FOR WASHINGTON RESIDENTS ONLY:*
WARNING: UNLESS YOU PROVIDE US WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY YOUR AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPER COVERAGE ELSEWHERE. YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR LOAN BALANCE. IF THE COST IS ADDED TO THE LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE. THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY WASHINGTON'S MANDATORY LIABILITY INSURANCE LAWS.

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| WAI K CHU | ▇▇▇▇▇▇▇ |

## BILLING RIGHTS NOTICE

**YOUR BILLING RIGHTS: KEEP THIS DOCUMENT FOR FUTURE USE**
*(applies to revolving subaccounts only):*

This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

**What To Do If You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at the address(es) listed on your statement.
In your letter, give us the following information:

1. Your name and account number.
2. The dollar amount of the suspected error.
3. If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:
- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing. You may call us, but if you do, we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**

When we receive your letter, we must do two things:

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

While we investigate whether or not there has been an error:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:
- If we made a mistake: You will not have to pay the amount in question or any interest or other fees related to that amount.
- If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within 10 days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

## SECURITY AGREEMENT

**Security Interest; Description of Collateral:** By signing the Consumer Lending Plan, or a document that specifically references this Security Agreement, or by signing any advance proceeds check, and/or by accessing, using, or otherwise accepting any funds, accounts or services under the Plan, you grant us a security interest in all goods, property, or other items purchased under this Plan (hereinafter referred to as "Collateral") either now or in the future, or in any other property given in connection with the Plan. Any required description of the Collateral shall appear on the Advance Receipt or similar document. The Collateral shall secure your advances even though you did not sign anything at the time of the advance. The security interest includes all increases, substitutions and additions to the Collateral, proceeds from any insurance on the Collateral and all earnings received from the Collateral. The security interest also includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which you buy within 10 days of the Advance or any extensions, renewals or refinancing of the Advance. If the value of the Collateral declines, you promise to give us more security if asked to do so. You also agree to abide by the terms of the Security Agreement and any Advance Receipt or similar document.

**CONSENSUAL PLEDGE of SHARES; Consensual Lien; Statutory Lien; Right to Set-off; Administrative Freeze:** By signing the Loan Application or Consumer Lending Plan, and/or by accessing, using, or otherwise accepting any funds, accounts or services, you grant us, and we impress, a lien on your shares and deposits in the Credit Union. We also have similar statutory lien rights in your shares and deposits under the Federal Credit Union Act and/or applicable state law, as well as the common law right to set-off and administrative freeze. "Shares," "share accounts," "deposits," and "deposit accounts" means any and all funds, regardless of the source of those funds, in any joint or individual account held and whether your interest in the account(s) is direct, indirect, contingent or secondary and whether held now or in the future. Your pledge and our lien rights do not include any IRA, Keogh or other account which would lose special tax treatment if pledged, or any irrevocable trust or fiduciary account in which you do not have vested ownership interest. IF YOU HAVE A CREDIT CARD WITH US, OUR RIGHTS ALSO APPLY TO THAT CREDIT CARD ACCOUNT.

If you default, we may apply the funds in your share accounts and deposit accounts to any obligations you owe us, without any legal process, court proceeding or any notice to any owner of the affected share and deposit accounts, unless applicable law so requires. You specifically agree that we have the right to place an administrative freeze on any of your share and deposit accounts subject to applicable law, and such action shall not violate 11 USC 362 or other applicable law. These rights are multiple and we can exercise one or all of them.

**CROSS-COLLATERALIZATION:** Property and/or shares and deposits given as security under this Plan or for any other loan you have with us will secure any and all advances under this Plan as well as any account owner's joint or individual obligations to us, now or in the future, whether direct, indirect, contingent or secondary and arising from any loan or credit agreement, insufficient fund items; fees; cost, expenses, reasonable attorney's fees, or otherwise. However, property securing another debt will not secure advances under this Plan if such property is your primary residence or are household goods. IF YOU HAVE A CREDIT CARD WITH US, THIS CROSS-COLLATERALIZATION CLAUSE ALSO APPLIES TO THAT CREDIT CARD.

**Release of Lien:** We will not release any lien on any collateral if you are delinquent on, or in default on, any subaccount under this Plan. For example, if you are in default of your line of credit subaccount, we will not release our lien on a vehicle loan, even if the vehicle loan is current or paid in full.

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| WAI K CHU | ■■■■■■ |

## SECURITY AGREEMENT

**No Liability for Dishonor:** We shall not have any liability relating to the dishonor or other return of any check or other item occurring as a result of us exercising our lien rights or good-faith freezing of your accounts.

**Ownership of the Collateral:** If you are granting a security interest in property you already own, you promise that the property is free of all security interests except that given to us or disclosed prior to the advance. You promise that you have informed us of any and all co-owners of the Collateral and/or any other person with an interest in or claim against the property. If you are using the advance proceeds to buy the property that shall be used as Collateral, you shall use those advance proceeds for the sole purpose of buying that Collateral. You shall not sell or lease the Collateral or use it as security for a loan with another creditor until the advance is repaid. You shall not allow another security interest or lien to attach to the Collateral either by your actions or by operation of law.

**Protecting the Security Interest:** You shall take any steps necessary for us to perfect our security interest in the Collateral. If asked to do so, you shall sign a financing statement or similar instrument to perfect our security interest and/or to protect our security interest from the claims of others.

**Use and Maintenance of Collateral:** Until the advance has been paid in full, you agree to (1) use the Collateral carefully and for the purpose it was intended and keep it in good repair; (2) Obtain our written permission before making material changes to the Collateral or changing the address where the Collateral is kept; (3) allow us to inspect the Collateral; (4) Promptly notify us if the Collateral is damaged, stolen or abused; (5) Not use the Collateral for any unlawful purpose; (6) pay all taxes, assessments and liens regarding the Collateral.

**Notices:** We may meet all requirements for sending you notice of any kind if we send it to you via United States mail, at your last given address. We may also meet this requirement by delivering these notices to you electronically if you have agreed to receive notices by electronic means.

**Additional Advances:** Any additional advances made by us for the payment of taxes or assessments or liens of any kind, or premiums on insurance and the interest owing thereon shall also be secured by this agreement. Such amounts shall be added to your loan balance and your minimum payment due shall be increased or your loan term extended accordingly.

**Disposition of Collateral:** If a default under the Plan occurs, we may repossess and sell the Collateral in a lawful manner. In such case, you will at our request assemble the Collateral and make it available to us at a place of our choosing, or we may enter the premises where the Collateral is kept and take possession, subject to applicable law. We may also render the Collateral unusable. If we decide to sell the Collateral at a public sale, private sale, or otherwise dispose of the Collateral, we will provide reasonable notice if required by law and will otherwise comply with applicable state law. If we sell or otherwise dispose of the Collateral we may collect from you reasonable expenses incurred in the retaking, holding and preparing the Collateral for and arranging the sale of the Collateral, as well as any deficiency balance as allowed under applicable law. We may also collect reasonable attorney's fees and legal expenses, permitted by applicable law, incurred in connection with disposition of the Collateral. We have certain rights and legal remedies available under the Uniform Commercial Code and other applicable laws, and we may use these rights to enforce payment if you default.

**Attorney-in-Fact:** You hereby appoint us as your Attorney-in-Fact to perform any acts which we feel are necessary to protect the Collateral and our security interest. You specifically authorize us to endorse on your behalf any check made payable to both you and us.

**Survival of Obligations:** This security agreement not only binds you, but your executors, administrators, heirs and assigns.

*Applies to Louisiana residents only:*

## Louisiana law permits repossession of motor vehicles upon default without further notice or judicial process.

If the secured collateral is a motor vehicle and you are in default, we may seize and sell the motor vehicle without demand for payment or advance notice to you. We may obtain and use a key or similar device to unlock and operate the motor vehicle. Collateral other than motor vehicles may be repossessed without judicial process only as allowed by applicable Louisiana law.

For purposes of foreclosure under Louisiana executory process, you hereby confess judgment in our favor for all amounts secured by the Plan, including, but not limited to, principal, interest, late charges, costs of collection, costs of preservation of the collateral, reasonable attorney's fees, and all other amounts advanced under the Plan. We may appoint a keeper of the property in the event of foreclosure. To the extent allowed under Louisiana law, you hereby waive the following rights and procedures under Louisiana law: (a) all rights and benefit of appraisal; (b) notice of seizure; (c) the 3-day delay afforded under Articles 2331 and 2722; and (d) all other provisions under Articles 2331, 2722 and 2723 and all other Articles not specifically mentioned herein.

9000 8-2010

| BORROWER'S NAME | ACCOUNT NUMBER |
|---|---|
| WAI K CHU | ▮▮▮▮▮ |

## PROGRAM AGREEMENT for DEBT PROTECTION PLAN - Consumer Loans

As used in this Debt Protection Plan Program Agreement ("Agreement"), "You", "Your" or "Borrower" means the person(s) who are obligated to repay a loan to us who have purchased debt protection under this Agreement. "We", "Our" or "Us" means, Chicago Patrolmen's Federal Credit Union, 1407 W. Washington Blvd., Chicago, IL 60607. "Plan Administrator" means Minnesota Life Insurance Company, 400 Robert Street North, St. Paul, Minnesota, 55101, or one of its affiliates, or a contracted third party.

This Agreement amends your loan or credit agreement. By enrolling in this Debt Protection Plan ("Plan"), you agree to abide by the terms of this Agreement. The Debt Protection Application is a part of this Agreement and is hereby incorporated as if fully set forth herein.

### DEFINITIONS

**Effective Date** means that date on which your Plan becomes effective, which is the later of: (1) the date you enroll in, and your eligibility is approved for, the Plan; or (2) the date of your first advance under a protected open-end credit plan.

**Presently working twenty-four (24) or more hours per week:** This term means that you are actively working for income for twenty-four (24) hours or more per week. "Working" means actually performing your job duties and not off of work due to leave of absence; layoff; routine or seasonal work interruption; or any other reason.

**Outstanding Balance and Payment:** "Outstanding Balance" means the outstanding loan balance as of the date a Protected Event occurs. "Payment" means the minimum monthly loan payment scheduled under your loan agreement. Outstanding Balance and Payment both refer to the protected amount under the Plan and include principal, interest, the Plan fee and any amounts which the creditor and borrower agreed to finance as part of the loan at the time the credit is extended. It does not include late fees or other fees; real estate taxes or property insurance premiums; or any amount that represents defaults in scheduled payments of either interest or principal. A scheduled lump-sum Balloon payment will only be protected if the Protected Event cancels the Outstanding Balance. Additionally, any advance taken during any period of Disability will not be protected and the payment for that advance will not be cancelled. You will be responsible for re-paying any amounts that are not cancelled.

**Pre-existing condition:** means a condition for which you received or had medical treatment, advice or diagnostic tests either for that same condition or a related condition within the six-month period immediately prior to the Effective Date and immediately prior to each and every advance taken. However, any Protected Event resulting from any such condition or a related condition will not be excluded if the Protected Event commences six months or more after the Effective Date of protection or six months or more after the advance is taken.

### TERMS OF PROTECTION

**Who is eligible for protection?**
This Plan protects an eligible Borrower ("Borrower 1") against Protected Events that occur while you are enrolled in the Plan ("Single Protection"). At an additional cost, you may purchase protection for a Co-Borrower ("Borrower 2") against the Protected Events within the Plan purchased ("Joint Protection"). Co-signers, guarantors, and non-borrower owners of collateral are not eligible for protection.

**What types of loans are eligible for protection under the Plan?**
The following types of loans are eligible for protection if the Plan is made available to you on that loan type: closed-end consumer loans if the loan has a term of 120 months or less; multi-featured consumer lending plans and unsecured lines of credit; and credit cards.

**What is the Plan Fee and how is it collected?**
The Plan Fee is the amount you pay for the Protection. It is calculated by applying the rate per $1,000 of your monthly outstanding balance or loan amount and will be charged and collected monthly. For closed-end loans, the fee becomes part of your required monthly loan payment. For open-end loans, or if Debt Protection is added after the start of your loan, the fee may be added to your outstanding balance as an advance each month without increasing your minimum monthly payment due. This may increase the time it takes to fully re-pay the loan and interest will accrue on the debt protection advance. If you fail to pay the fee, we can cancel the protection or, at our option, add the fee to your outstanding balance upon which it will accrue interest. Such addition may extend the term of your loan.

**Can the Plan Fee and terms of this Agreement Change?**
Yes. We can change the terms of this Agreement, including the rates, at any time. If we do so, you will be provided prior notice and an opportunity to cancel your Agreement under the Plan.

**Can this Agreement be contested?**
Yes. If we find that you did not meet the eligibility requirements at the time of your application, your protection under the Plan will be removed, you will receive a refund of fees paid, and an otherwise valid claim will be denied.

### PROTECTED EVENTS
The following describes the types of Protected Events and the protection afforded under each Plan:

**DEATH** *(Premium & Classic Plans; Joint Protection Available)*

**What is the Death benefit?**
For each protected borrower, we will cancel the amount of your Outstanding Balance as of the date of death, up to $75,000. If two protected Borrowers die simultaneously, we will cancel the Outstanding Balance, up to $75,000. In no event will an excess of $75,000 be cancelled.

**DISABILITY** *(Premium & Premier Plans; Joint Protection Available)*

**What does Disability mean and how do I qualify for Disability?**
Disability means your continuous inability, due to sickness or injury, to perform the substantial and material duties of your regular occupation and you are under the regular care and treatment of a licensed physician or licensed health care provider. To qualify for Disability protection, you must disabled for 14 consecutive days. Benefits begin to accrue on the fifteenth (15th) day that you are disabled.

| BORROWER'S NAME | ACCOUNT NUMBER |
|---|---|
| WAI K CHU | ███████████ |

**What amounts will be cancelled under the Disability protection?**
For each occurrence of Disability, we will cancel 1/30th of the Payment for each day that you are disabled beginning with the fifteenth (15th) day of Disability and continuing for up to twelve (12) Payment cancellations. However, cancellations will immediately cease if you recover or return to work; or if the loan is paid off, is refinanced, or is discharged for any reason. Cancellation is limited to a total of $15,000 over the term of the loan, regardless of the number of occurrences. The maximum monthly cancellation is $1,000.

**What if the same or related disability occurs?**
Please see the *"What if I suffer a recurrence?"* question in the General Provisions section below.

### EXCLUSIONS
*Exclusions apply to both the Outstanding Balance and any and all advances under a multi-featured consumer lending plan.*

Benefits will not be provided under **any Protected Event** if the Protected Event:
(1) is due to suicide committed within the first 2 years of protection; (2) is due to an intentionally self-inflicted injury; (3) is due to a Pre-existing Condition; (4) results from war or any act of war, whether declared or undeclared; (5) occurs on or after your 70th birthday.

The following exclusions apply in addition to the above:

Benefits will not be provided under **Disability** protection if:
The disability is related to a normal pregnancy, normal childbirth, or elective abortions. Complications due to pregnancy or childbirth will only be protected if the complications themselves are the cause of the disability.

### GENERAL PROVISIONS
**How do I obtain benefits and verify a Protected Event under the Plan?**
To obtain benefits under the Plan, you must notify us of a Protected Event within 30 days or as soon as possible, but no later than six (6) months after the occurrence of the Protected Event, and provide any documentation or information required by us at the time of your claim and/or throughout the period for which Payments are being cancelled. You must be able to verify the Protected Event to our satisfaction. If your delay in filing a claim prevents us in any way from determining eligibility under the Plan, no benefit will be issued.

**What if I sustain an unrelated injury or sickness while I am disabled?**
If you are disabled ("original occurrence") and sustain an additional sickness or injury which would be in and of itself disabling, the additional sickness or injury will not be considered a new occurrence of Disability, but rather will be considered the same occurrence. This means that you will receive benefits only if you did not exhaust your maximum per-occurrence benefits in connection with the original occurrence.

**What if I suffer a recurrence of the same or related Protected Event?**
If you incur a claim for the same type of Protected Event again within six (6) months after you have recovered or returned to full-time work, we will consider this a continuation of the prior event. (For disability, however, this only applies if you are disabled due to the same condition.) This means that the maximum number of cancellations per occurrence for the prior event will still apply; if that maximum was already reached, no benefits will be issued. If you incur a claim for the same type of Protected Event again more than six (6) months after you have recovered or returned to full-time work, we will consider this a new event and the terms and conditions of the Plan apply as if no prior event occurred. This provision applies whether you return to work full-time with the same or different employer.

**What is the status of my loan following the occurrence of a Protected Event?**
During the time it takes to process your request for benefits, you are responsible for making your monthly payment by the due date. Once benefits begin, you are responsible for any difference between the minimum payment due on the loan and the amount that is cancelled.

**What if the term of my loan ends while I am receiving cancellations under the Plan?**
Regardless of the number of cancellations you may otherwise be entitled to, cancellations will cease if the loan is paid off, is refinanced, or is discharged for any reason.

**How can the Plan be terminated?**
You may terminate this Agreement at any time by writing us at Chicago Patrolmen's Federal Credit Union, 1407 W. Washington Blvd., Chicago, IL 60607. If you do so within thirty (30) days of your enrollment in the Plan, we will credit your loan account for any fees charged for this protection. We can terminate this Agreement by giving you written notice at least thirty (30) days in advance of the termination. Termination by us or you will be effective on the first of the month following termination. Fees for the month in which notice of termination is received will still be due and collected from the loan payment.

Your Plan participation will terminate without advance notice if: (1) your loan is paid off, refinanced, or discharged for any reason; (2) required loan payments are past due by 90 days or more; (3) you fail to pay the Plan Fee; (4) all protected Borrowers under the Plan reach the age of 70 or die; or (5) the protected Outstanding Balance is paid off under the terms of the Plan or all maximum cancellations are reached. If you bring your loan current after your Protection has been terminated for delinquency, protection will not be reinstated automatically and you must re-apply for the Plan.

**What are the tax implications?**
You may be subject to federal, state and local taxes on the amount of your cancelled loan payment or balance. You should consult your tax advisor. We or the Plan Administrator do not provide you with guidance on the tax implications, if any, of a cancelled debt.

**What if I have questions about the Plan?**
Telephone us at 312-726-8814 or write to us at Chicago Patrolmen's Federal Credit Union, 1407 W. Washington Blvd., Chicago, IL 60607 if you have any questions regarding this Plan.